James D. Greene, Esq., NV Bar No. 2647
**RICE SILBEY REUTHER & SULLIVAN, LLP**
3960 Howard Hughes Pkwy, Suite 700
Las Vegas, Nevada 89169
Ph: (702) 732-9099
Fax: (702) 732-7110
E-mail: jgreene@rsrslaw.com

E-Filed: *December 21, 2009*

Attorneys for Creditors B3 Holdings, LLC
and Anthony Martino

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>HOTEL FURNITURE SALES, INC.<br><br>Debtor. | Bankruptcy No.  BK-S-09-29126-MKN<br><br>Chapter 11<br><br>**Hearing**<br>**Date:    January 20, 2010**<br>**Time:    9:30 a.m.** |

## MOTION FOR ORDER CONVERTING CASE TO CHAPTER 7 OR FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE OR EXAMINER

B3 Holdings, LLC and Anthony Martino ("Movants"), by and through their counsel, Rice Silbey Reuther & Sullivan, LLP, hereby submits this Motion for Order Converting Case to Chapter 7 or Appointment of a Chapter 11 Trustee or Examiner ("Motion"). This Motion is based upon the attached Memorandum of Points and Authorities, the Affidavits of Anthony Martino Darcy Dahlem and James D. Greene, filed concurrently herewith, the pleadings and papers on file in this bankruptcy case, and any arguments that may be offered.

DATED this 21st day of December, 2009.

                                             RICE SILBEY REUTHER & SULLIVAN, LLP

                                             */s/ James D. Greene*
                                             James D. Greene, Esq., NV Bar No. 2647
                                             3960 Howard Hughes Parkway, Suite 700
                                             Las Vegas, NV  89169

                                             Attorney for B3 Holdings, LLC and Anthony Martino

1

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.     FACTUAL BACKGROUND**

Debtor filed a petition under Chapter 11 of the United States Bankruptcy Code on or about October 12, 2009. On November 19, 2009 a meeting of creditors was held before the United States Trustee. The above-captioned case should be converted to a case under chapter 7 for "cause" under Bankruptcy Code Section 1112(b) because there is a "continuing loss to or diminution" of the bankruptcy estate of Hotel Furniture Sales, Inc. ("Debtor") and the absence of a reasonable likelihood of rehabilitation under 11 U.S.C. § 1112(b)(4).

In the spring of 2007, the Debtor, the Movants and the manager of movant B3 Holdings, LLC, Darcy Dahlem, entered into a stock purchase agreement, pursuant to which Barton Maybie, the Debtor's only officer and principal and/or the Debtor were paid directly or indirectly in excess of $1,150,000.00. Virtually all of these funds went directly, or through Mr. Maybie, to the Debtor to assist in financing its operations. Affidavit of Darcy Dahlem ("Dahlem Affidavit"), ¶ 4.

Mr. Maybie represented that the Debtor was a well capitalized company with strong earnings and good management. In fact, however, the Debtor was in extreme financial distress due to Mr. Maybie's gross mismanagement, malfeasance and nonfeasance. Affidavit of Anthony Martino ("Martino Affidavit"), ¶¶ 6 and 8.

At the November 19, 2009 creditors' meeting, Mr. Maybie indicated that the Debtor was delinquent in paying rent on its existing real property lease, that the amount of rent required by the lease was too much for the Debtor to pay during the current economic downturn, that it was attempting to negotiate a modification of the lease and that a "drop dead" date for renegotiating the lease was December 7, 2009. As of this date, the Debtor has not filed any documents indicating that it has addressed or resolved this issue. Debtor's counsel advised counsel for Movants on December 18, 2009 that Debtor had been unable to re-negotiate its lease and that it would have to move, although a new lease had not been negotiated. Meanwhile, the Debtor's current lease expires on or about January 20, 2009. Affidavit of James D. Greene, ¶ 2 ("Greene Affidavit).

///

Additionally, Mr. Maybie stated that he owns an affiliated company, CBC Financial Corp. that uses office space at the Debtor's premises without payment and which had made "40 to 50" loans to the Debtor, some of which had been repaid in the year preceding the Debtor's Chapter 11 filing. Mr. Maybie further acknowledged several deficiencies in the Debtor's bankruptcy, including inconsistencies in the listing of loans to the Debtor by himself and by affiliated companies, listing of assets on Schedule B. For instance, the Debtor lists no automobiles, trucks or similar assets, even though Mr. Maybie acknowledged the Debtor's ownership of numerous forklifts, trucks and tractor trailers. Similarly, the Debtor lists no office equipment, furniture or similar assets, even though he acknowledged the Debtor had significant office furniture, equipment and related items. Greene Affidavit, ¶¶ 2 and 3.

Mr. Maybie continues to mismanage the Debtor and encompasses an array of fraudulent misdeeds, including the transfer of tens of thousands of dollars worth of the Debtor's assets outside the United States to his condominium in Puerto Penasco, Mexico and elsewhere. Further, Mr. Maybie has used funds from sales of the Debtor's furniture to pay down his mortgage of the condominium in Mexico, and he has arranged, or is arranging, numerous additional shipments of the Debtor's assets to Mexico. In addition, Mr. Maybie had used the Debtor's assets to furnish residential investment properties owned by himself or affiliated companies. Dahlem Affidavit ¶ 7 and Martino Affidavit ¶ 12.

As a result of Mr. Maybie's mismanagement and of the Debtor's assets, the Debtor filed a petition under Chapter 11 of the United States Bankruptcy Code on or about October 12, 2009.

**B.    LEGAL ARGUMENT**

Conversion of this case is warranted for bad faith, due "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," and due to "gross mismanagement of the estate." 11 U.S.C. § 1112. If conversion is not granted, then the Movants request appointment a chapter 11 trustee, so that a trustee can corral the Debtor's remaining assets for proper distribution to its creditors. Alternatively, the Court should at a minimum appoint an examiner to evaluate the Debtor's affairs.

///

Bankruptcy Code § 1112(b)(2)(B) states that, if an interested party moves for conversion under 11 U.S.C. § 1112(b)(4)(A) and establishes "cause" for such relief the relief must be granted unless the court identifies specific "unusual circumstances" demonstrating that conversion of the case is not in the best interests of the creditors. Through the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119, Stat. 23 (2005), Congress eliminated this Court's discretion that was previously reflected in the appearance of the permissive word "may" into 11 U.S.C. § 1112(b) and, through substitution of the mandatory word "shall" for "may," directed this Court to convert or dismiss this case, "whichever is in the best interests of the creditors and the estate," if "cause" is established. 7 COLLIER ON BANKRUPTCY § 1112.04(1) (15th ed. rev. 2005) (". . . as amended in 2005, section 1112(b) circumscribes the court's discretion by directing certain instances in which the court must, and must not, convert or dismiss the case."); *cf. Association of Civilian Technicians v. FLRA*, 22 F.3d 1153 (D.C. Cir. 1994) ("[t]he word 'shall' generally indicates a command that admits of no discretion on the part of the person instructed to carry out the directive").

The purpose of 11 U.S.C. § 1112(b)(4)(A) is to "preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995) (quoted in *Loop Corp. v. United States Trustee* (*In re Loop Corp.*), 379 F.3d 511, 516 (8th Cir. 2004). *Trident Associates Limited Partnership v. Metropolitan Life Insurance*, 52 F.3d 127 (6th Cir. 1995) (citation omitted) set forth the standard for dismissal as follows:

> Under § 1112(b), a court [shall] dismiss a Chapter 11 petition "for cause." Neither § 362(d) nor § 1112(b) define "cause," so "courts must determine whether discretionary relief is appropriate on a case-by-case basis." Under both of these sections, bad faith can constitute cause. Because the "totality of the circumstances" must be considered, no single test for good faith can be recited, but this court has laid out some guideline:
>
> [G]ood faith is an amorphous notion, largely defined by factual inquiry. While no single fact is dispositive, courts have found the following factors meaningful in evaluating an organizational debtor's good faith:
>
> (1)  the debtor has one asset;
>
> (2)  the pre-petition conduct of the debtor has been improper;

4

  (3)  there are only a few unsecured creditors;

  (4)  the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court;

  (5)  the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford

  (6)  the filing of the petition effectively allows the debtor to evade court orders;

  (7)  the debtor has no ongoing business or employees; and

  (8)  the lack of possibility of reorganization.

*Id.*

"A chapter 11 debtor has the burden of proving this 'good faith' element is met, as well as the burden of proving all of the other elements governing plan confirmation." *In re Silberkraus*, 253 B.R. 890, 902 (Bankr. C.D. Cal. 2000) (citations omitted); affirmed *In re Silberkraus*, 336 F.3d 864 (9th Cir. 2003). "All of the facts and circumstances leading up to the filing of the case, and the conduct of the Debtor during the case, can properly be considered by the Court in determining whether the chapter 11 case was subject to dismissal or conversion." *Id*. *In re Premier Automotive Services, Inc.*, 492 F.3d 274, 279 (4th Cir. 2007) summarized the need to make a threshold good faith finding as follows:

> [T]he ability of a bankruptcy court to conduct a threshold inquiry into the good faith of a petitioner is "indispensable to proper accomplishment of the basic purposes of Chapter 11 protection." As this court has explained, "a good faith requirement 'prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes.'" The good faith standard also "'protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshaling and turnover of assets) available only to those debtors and creditors with clean hands.

*Id.* (Citations omitted).

Reorganization in this case is futile and the facts and circumstances of its filing and all pre-petition conduct of the Debtor, through Mr. Maybie, indicate bad faith, fraud, mismanagement and malfeasance. The Debtor's failure to properly schedule assets, the loss of its lease and Mr. Maybie's prior conversion of the Debtor's assets have lead it to financial ruin. Mr. Maybie also has a history of using the Debtor's assets for his own benefit and may be planning to remove them outside the jurisdiction of this Court and the United States to Mexico for his own

benefit. It is obviously contrary to the policies and purpose of a bankruptcy reorganization to reorganize an estate wherein all of its assets are absconded and misappropriated by a debtor-in-possession.

Likewise, the Debtor's unsecured creditors, who are anticipated to be comprised of defrauded victims of Mr. Maybie, will be extremely hostile to any plan the Debtor could plausibly propose. There is little likelihood the Debtor will be able to secure the necessary votes to confirm a plan.

The Debtor's conduct, by and through Mr. Maybie, that precipitated this bankruptcy case was neither "honest nor the product of misfortune." Therefore, given these circumstances, and consistent with 11 U.S.C. § 1112(b)(1), this Court is required to convert the above-captioned case to a chapter 7 case or dismiss, or, in the alternative, appoint a chapter 11 trustee or examiner. In light of the facts and circumstances in this case, the Movant submits that conversion of this case under chapter 7 is appropriate course of action.

For the foregoing reasons and based on the aforementioned authorities, the Movant seeks an order converting the above-captioned case to a case under chapter 7.

DATED this 21st day of December, 2009.

RICE SILBEY REUTHER & SULLIVAN, LLP

_/s/ James D. Greene_
James D. Greene, Esq., NV Bar No. 2647
3960 Howard Hughes Parkway, Suite 700
Las Vegas, NV 89169

Attorney for B3 Holdings, LLC and Anthony Martino